HOLLISTER INCORPORATED, a corporation, The Firm of John Dickinson Schneider, Inc., a corporation, Plaintiffs,

v.

TWENTIER'S RESEARCH, INC., a corporation, Max Twentier, Defendants.

Civ. No. 3458–PHX.

United States District Court
D. Arizona.

May 29, 1962.

Findings of Fact and Conclusions of Law, Sept. 13, 1962.

Judgment, Sept. 18, 1962.

Evans, Kitchel & Jenckes, Phoenix, Ariz., Hofgren, Brady, Wegner, Allen & Stellman, Chicago, Ill., for plaintiffs.

Christy, Kleinman, Peterson & Hoyt, Phoenix, Ariz., for defendants.

DAVIS, District Judge.

The above matter having come on for hearing and plaintiffs and defendants having presented testimony, and thereafter both parties having rested, and having filed memoranda of authorities, and the court having examined the authorities, the court is of the opinion that while the various constituent elements set forth in the patent are not new, the manner in which they are combined and utilized does result in a new product which is a proper subject for patent protection. It is apparent from the evidence that the claims of the patent cover a field of utility not possessed by any prior method or means of patent identification. Technical Tape Corp. v. Minnesota Mining and Mfg. Co., 2 Cir., 247 F.2d 343.

■ The Court is of the opinon that the patent which is the basis of plaintiffs' first cause of action is valid and binding, and that the same has been infringed by the defendants, Twentier's Research, Inc. and Max Twentier.

■ The Court is of the further opinion that the plaintiffs have failed to establish sufficient facts to recover on the second cause of action, it not being shown by the evidence that information and knowledge gained by the defendant, MAX TWENTIER, was of a confidential relationship or that it was the source of knowledge used by him in his own business later on.

IT IS THEREFORE ORDERED that the plaintiffs prepare and submit Findings of Fact and Conclusions of Law supporting the validity of the patent, its infringement by the defendants, and looking to the relief prayed for pursuant to the allegations of the first cause of action, and looking to entry of a judgment in conformity therewith.

IT IS FURTHER ORDERED that said findings of fact and conclusions of law embody such provisions as will establish that plaintiff take nothing by its second cause of action.

IT IS FURTHER ORDERED that upon presentation and approval of the Findings of Fact and Conclusions of Law, a

formal judgment will be entered herein, and that plaintiff submit a proposed form of judgment at the same time as the presentation of the Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

(1) Plaintiff, Hollister Incorporated, is an Illinois corporation having its principal office and place of business at 740 N. Franklin Street, Chicago, Illinois.

(2) Plaintiff, The Firm of John Dickinson Schneider, Inc., is an Illinois corporation having its principal office and place of business at 833 North Orleans Street, Chicago, Illinois.

(3) Defendant, Twentier's Research, Inc., is an Arizona corporation having its principal office and place of business at 708 East Garfield, Phoenix, Arizona.

(4) Defendant, Max Twentier, is a resident of the State of Arizona, residing at 4716 W. Indianola Avenue, Phoenix, Arizona.

(5) Plaintiffs' Complaint includes two causes of action, the first being for patent infringement. Jurisdiction of said first cause of action arises under the Patent Laws of the United States.

(6) At least some of the acts of infringement complained of herein were committed in the State of Arizona.

(7) Plaintiffs' Complaint includes as a second cause of action, unfair competition.

(8) Jurisdiction of the second cause of action arises out of its relation to the first cause of action, because of diversity of citizenship, and because the amount in controversy, exclusive of interest and cost, is in excess of $10,000.00.

## FIRST CAUSE OF ACTION

(9) On October 4, 1960, United States Letters Patent No. 2,954,620 were duly and legally issued to Plaintiff, The Firm of John Dickinson Schneider, Inc., for an invention in an "Identification Means".

(10) On October 6, 1960, said United States Letters Patent No. 2,954,620 were duly and legally assigned to Plaintiff, Hollister Incorporated, and since that date Plaintiff, Hollister Incorporated, has been and still is the owner of said Letters Patent, together with the right to bring and maintain a suit for any and all infringements thereof.

(11) The invention disclosed in the patent in suit relates to an identification means in the form of a band adapted to be encircled about a member to be identified and is particularly useful in identifying inmates of hospitals and other institutions of similar nature. The band has found substantial use in identifying people not able or desirous of identifying themselves, such as patients in hospitals or asylums and inmates in jails.

(12) The need for accurate and positive identification of patients has existed as long as hospitals have been in existence. Misidentification of patients in hospitals has led to tragic results. This is particularly true in the area of medication where misidentification of patients leads to a patient getting medication he should not have received, and the corollary of a second patient not getting the medication he should have gotten. Surgical errors of serious and sometimes fatal consequences have resulted from patient misidentification.

(13) By the middle of the last decade, the situation had become so serious that in the State of California, for example, hospitals found it extremely difficult to obtain adequate malpractice insurance insuring them against losses resulting from patient misidentification. In the field of medication errors alone, approximately 45% of all the errors were due to patient misidentification. As a result, the California Hospital Association through its Insurance Council instituted a study of the situation in an effort to find a solution for the problem.

(14) Prior to the invention of the patent in suit many methods of identifying patients in hospitals had been attempted. None of such methods was satisfactory.

(15) A suitable patient identification means for use in hospitals and other institutions is one which meets the fol-

lowing criteria. It must be one which is attached to and hence travels with the patient. It must be one which is readily visible and must be non-removable except by tearing, or cutting, or other means, rendering the fact that it has been removed obvious. After being removed, the band should also be non-replaceable. The identification means must carry pertinent data positively identifying the patient and such data must be protected against alteration or obliteration due to contact with or exposure to moisture. The identification means should be non-irritating and comfortable for the patient to wear and should be individually fitted to each patient. These criteria created the problem not the solution.

(16) Prior to the invention disclosed in the patent in suit, none of the proposed patient identification systems met the foregoing criteria. Such prior systems included the placing of the patient's name on the door of the hospital room or on the bed to which the patient was assigned. Such means provided no identification of the patient if he was not in his bed or in his room. Other means of identification included the inscription of the patient's name to a piece of adhesive tape which was stuck to the patient. Aside from the fact that the tape was often irritating to the patient, the tape could readily be removed or exchanged, and the name was easily obliterated by body moisture.

(17) The band shown in the Wallich patent No. 2,561,894 was thoroughly tested at the University of California Hospitals in San Francisco and found to be unsatisfactory not only because it could be removed and replaced and hence could be exchanged by the patients, but also because the data including the patient's name inscribed thereon became obliterated.

(18) A band made in the manner described in the Smiley patent No. 2,449,-181 would be dangerous to use inasmuch as it is constructed so as continually to tighten its grip around the patient's wrist to the point where circulation could be interfered with. No evidence was produced indicating that a band of the Smiley type had ever been commercially successful.

(19) A further method of on-the-patient identification was one wherein the patient's name was written out in a row of beads strung on a string and tied to a patient's wrist. The bracelets so formed are often referred to as the Deknatel beads. This was proved to be unsatisfactory as the string often broke and the identification thereby lost.

(20) The identification means disclosed in the patent in suit meets the criteria set forth above and solves the problem. It comprises a band in the form of an elongated tube of transparent plastic material which is adapted to be encircled about the wrist of a patient. The tube is made of a soft, light-weight, non-irritating plastic such as vinyl and is rendered non-stretchable by the inclusion therein of a piece of non-stretchable plastic material within the tube. Means which may take the form of a rivet is provided for positively securing the band around the wrist of the patient. A card bearing the patient's name and other desired data is provided for insertion into the tube, which insertion is accomplished by the exertion of a pushing force against a portion of the card, which portion may or may not be detachable, as desired. As the card is enclosed within the tube, it is protected against moisture and inasmuch as the tube is firmly secured as by a rivit or other means around the wrist of a patient, neither the card nor band is removable without cutting or tearing the tube, a fact which is readily apparent upon inspection. Thus, the identification means disclosed in the patent in suit certainly meets all the requirements of a patient identification system.

(21) The identification means disclosed in the patent in suit is sold under the trademark IDENT-A-BAND. The IDENT-A-BAND met with immediate and widespread success. In 1952, when the bands were first sold, sales amounted to a quarter of a million bands. By 1961

almost fifteen million bands were being sold annually. Thus, this would indicate a steady and substantial growth. There are about seven thousand hospitals in the United States and Canada, and as of the end of calendar year 1961, Plaintiff's IDENT-A-BAND product was being used in over four thousand hospitals.

(22) Since 1955 the use of identification means of the type described in the patent in suit has been adopted on an increasing scale in the hospitals in California until at the present time, approximately 95% of the hospitals use such identification means. As a result, medication errors due to patient misidentifi-cation have been reduced from 45% to somewhere between 10 to 15%, the remaining errors being human errors rather than deficiencies in the identification means.

(23) The advertising budget for the IDENT-A-BAND, which is the trademark used by Plaintiff to designate the product of the patent in suit, is between 4 and 5% of gross sales annually, which is a relatively low advertising budget in the hospital supply field.

(24) Defendant has relied on the following patents as anticipating the claims of the patent in suit, namely,

| 1,298,859 | Anthony | Apr. | 1, | 1919 |
| 1,332,421 | Bogardus | Mar. | 2, | 1920 |
| 1,447,982 | Hennefer | Mar. | 13, | 1923 |
| 1,750,192 | Prendergast | Mar. | 11, | 1930 |
| 1,806,142 | Beck | May | 19, | 1931 |
| 1,815,632 | Pannier, Jr. | July | 21, | 1931 |
| 1,846,726 | Isaacs | Feb. | 23, | 1932 |
| 1,862,747 | Haas | June | 14, | 1932 |
| 1,905,392 | Freydberg | Apr. | 25, | 1933 |
| 1,922,767 | Humphner | Aug. | 15, | 1933 |
| 1,991,673 | Horne | Feb. | 19, | 1935 |
| 2,449,181 | Smiley | Sept. | 14, | 1948 |
| 2,561,894 | Wallich | July | 24, | 1951 |
| 2,641,074 | Richmond | June | 9, | 1953 |

None of these patents discloses or otherwise anticipates the invention of the patent in suit.

(25) John Dickinson Schneider, the patentee, is the original and first inventor of the invention of United States Letters Patent No. 2,954,620. The invention of United States Letters Patent No. 2,954,620 was not known or used by others in this country before the invention thereof by Schneider, was not patented or described in this country or any foreign country before the invention thereof by Schneider, or for more than one year before the filing of the application for patent thereon, and was not in public use or on sale before the invention thereof by Schneider, or for more than one year before the filing of the application for patent thereon.

(26) The specification of the Schneider patent describes the structure and mode of operation of the identification means of the Schneider invention in language that is clear and definite. The claims and the specification state the invention in terms of structure and function and explain the interaction of the parts.

(27) The Schneider patent describes the invention thereof in such full, clear and exact terms as to enable any person skilled in the art or science to which it pertains or with which it is most clearly connected, to make, employ or use the same, and the claims thereof point out

and distinctly claim Schneider's invention.

(28) The identification means of the Schneider patent represents a combination of elements, and while the various constituent elements set forth in the patent are not new per se, the manner in which they are combined and utilized does result in a new product which is a proper subject for patent protection.

(29) The prosecution in the United States Patent Office of the applications which resulted in the patent in suit, was in all respects proper.

(30) The Defendant, Twentier's Research, Inc. manufactured and sold, since the issuance of the Schneider patent and prior to the filing of this action, an identification means under the trademark SURE-BAND.

(31) The Defendant, Max Twentier, concerted with and actively induced the Defendant, Twentier's Research, Inc., to manufacture and sell the SURE-BAND identification means.

(32) The Defendants' identification means comprises an elongated tube of transparent plastic material, at least one strip of mylar, which is a non-stretchable plastic material, in the tube, a rivet for use in securing the tube around a member, and a card having a pusher portion and a second portion to bear identification data. The card is intended to be inserted into one end of the tube by the pusher portion to leave the second portion within the tube. The pusher portion may either be separated from the data-bearing portion or may be left within the tube. The tube is intended to be encircled about a member to be identified, such as a patient's wrist.

(33) Defendants' SURE-BAND responds to the terms of claims 3 and 4 of the Schneider patent from the standpoint of structure and function and from the standpoint of interaction of the parts.

(34) Defendants' SURE-BAND incorporates each of the elements of claims 3 and 4 of the patent in suit. Defendants' SURE-BAND infringes claims 3 and 4 of the patent in suit.

## SECOND CAUSE OF ACTION

(35) From about February 3, 1958 until on or about July 31, 1958, the Defendant, Max Twentier, was employed by the Plaintiff, The Firm of John Dickinson Schneider, Inc.

(36) In the second cause of action Plaintiffs have alleged that the Defendant, Max Twentier, was so employed in a position of special trust and as such gained certain information and knowledge of a confidential nature that was subsequently used by him in his own business.

(37) The proof introduced by Plaintiffs in support of the second cause of action fails to establish sufficient facts to entitle Plaintiffs to recover on said second cause of action, it not being shown by the evidence that information and knowledge gained by the Defendant, Max Twentier, was of a confidential relationship or that it was the source of knowledge used by him in his own business later on.

## CONCLUSIONS OF LAW

(1) This Court has jurisdiction of the parties.

(2) This Court has jurisdiction of the causes of action alleged in the Complaint for patent infringement under the Patent Laws of the United States, and for unfair competition as a related cause of action.

(3) The Schneider patent No. 2,954,-620 was duly and legally issued to Plaintiff, The Firm of John Dickinson Schneider, Inc., and was subsequently assigned to Plaintiff, Hollister Incorporated, who still is the owner thereof together with all rights to damages for infringement thereof.

(4) The prior art offered in evidence by the Defendants does not anticipate the claims of the Schneider patent in suit.

(5) The claims of the Schneider patent describe a structure which involves invention over the prior art.

(6) The Schneider patent in suit and the claims thereof are good and valid in law.

(7) The claims of the Schneider patent in suit express the novel concept constituting the Schneider invention and such concepts are set forth in terms of a combination of elements and their cooperative physical and functional relationship which contribute to the new result.

(8) John Dickinson Schneider is the first inventor of the subject matter claimed in the Schneider patent in suit.

(9) Defendant, Twentier's Research, Inc., in its manufacture and sale of identification means has infringed claims 3 and 4 of the Schneider patent in suit.

(10) Defendant, Max Twentier, actively induced the Defendant, Twentier's Research, Inc., to manufacture and sell identification means in infringement of claims 3 and 4 of the Schneider patent in suit and is therefore guilty as an infringer.

(11) Claims 3 and 4 of the Schneider patent in suit read literally upon the identification means manufactured and sold by the Defendant, Twentier's Research, Inc., under inducement by the Defendant, Max Twentier, which identification means embody the invention defined therein.

(12) Plaintiff, Hollister Incorporated, is entitled to an injunction against further infringement of the Schneider patent in suit by Max Twentier and Twentier's Research, Inc.

(13) The Plaintiffs shall take nothing by the second cause of action.

## JUDGMENT

This cause coming on to be heard upon the trial of the issues therein, and the Court having heard evidence presented in open court and arguments of counsel, and being fully advised in the premises,

DOTH ORDER, ADJUDGE AND DECREE:

(1) Plaintiff, Hollister Incorporated, is the owner of the entire right, title and interest in and to United States Letters Patent No. 2,954,620 together with all rights of action for infringement thereof by Defendants.

(2) United States Letters Patent No. 2,954,620 and the claims thereof are good and valid at law.

(3) Defendant, Twentier's Research, Inc., has infringed claims 3 and 4 of said Letters Patent No. 2,954,620.

(4) Defendant, Max Twentier, is guilty as an infringer of claims 3 and 4 of said Letters Patent No. 2,954,620.

(5) Defendants jointly and severally shall account to Plaintiffs for damages arising from Defendants' infringement of said Letters Patent No. 2,954,620 by their manufacture and sale of identification means described in claims 3 and 4 thereof, together with such cost and interest as may be fixed by the Court.

(6) An injunction shall issue out of and under the seal of this Court enjoining Defendants, Twentier's Research, Inc., and Max Twentier, their officers, agents, servants, employees, and those person or persons and companies or corporations in active concert or participation with them, from making, using, or selling, or aiding or abetting or actively inducing others to manufacture, use or sell, identification means comprising an elongated tube of transparent plastic material having a strip of non-stretchable plastic material therein, wherein said tube is adapted to be encircled about a member to be identified, and is provided with means for securing said tube about such a member, in combination with a card adapted to be inserted into the tube with the card having a pusher portion and a second portion adapted to bear identification data.

(7) The Plaintiff, Hollister Incorporated, is entitled to recover from the Defendants, Twentier's Research, Inc. and Max Twentier, all damages permitted by Section 284 of 35 U.S.Code, not less than a reasonable royalty; and this Court retains jurisdiction of this cause for the purpose of ascertaining said damages and for issuing all orders necessary to such ascertainment, including, in the Court's discretion, a reference to a Special Master appointed by this Court.

(8) Costs incurred by Plaintiffs with regard to the first cause of action are hereby awarded to Plaintiffs, and Defendants' costs as regards the second cause of action are hereby awarded to Defendants.